# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 13-395V
Filed: July 20, 2017

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| KATELIN B KRAUSE, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | |
| v. | * | Interim Attorneys' Fees and Costs; |
| | * | Respondent Does Not Object; |
| SECRETARY OF HEALTH | * | Protracted Litigation |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

*Andrew Krueger, Esq., Krueger & Hernandez S.C., Middleton, WI,* for petitioner.
*Debra Begley, Esq., U.S. Department of Justice, Washington, DC,* for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth,** Special Master:

On June 13, 2013, Katelin Krause[2] ("Ms. Krause" or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[3] [the "Vaccine Act" or "Program"]. Petitioner alleged that she developed transverse myelitis ("TM") after receiving human papillomavirus ("HPV"), hepatitis A, hepatitis B, and

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I intend to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information, that satisfies the criteria in 42 U.S.C. § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.

[2] Petitioner originally filed the Petition as "Katelin Arnold." On January 30, 2017, petitioner filed a Motion to Amend the Case Caption to change her name to "Katelin Krause" to reflect her recent marriage.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

influenza vaccines. *See* Petition ("Pet."), ECF No. 1. On June 26, 2017, petitioner's counsel filed a motion for interim attorneys' fees and costs in the amount of $68,948.00, pursuant to Section 15(e) of the Vaccine Act. Motion for Interim Attorneys' Fees ("Motion for Fees"), ECF No. 75, at 5. After careful consideration, the undersigned has determined to **grant the request in full** for the reasons set forth below.

## I. Background

The petition was filed on June 13, 2013; petitioner alleged that she developed TM after receiving an HPV vaccination on April 1, 2011; HPV, hepatitis A, and hepatitis B vaccinations on July 27, 2011; a hepatitis B vaccination on January 9, 2012; and an influenza vaccine on January 23, 2012. Pet. at 1, ECF No. 1. Petitioner alleged that within three weeks of receiving the second HPV vaccination, she began having shin pains in both legs, which persisted for more than six months. *Id*. This case was initially assigned to Special Master Hamilton-Fieldman. ECF No. 2.

Respondent filed his Rule 4(c) Report ("Resp. Rpt.") on December 12, 2013, indicating that this case was not appropriate for settlement. ECF No. 16. Respondent noted that, before her alleged injury, petitioner had previously received physical therapy for patellofemoral pain syndrome. Resp. Rpt. at 2-3; Pet. Ex. 4 at 5. Respondent further noted that a diagnosis of TM was ruled out by several of petitioner's treating physicians, and that many of her physicians "opined that her condition was more likely a stress reaction that was isolated to her shins." Resp. Rpt. at 18. Indeed, petitioner was diagnosed with stress fractures by seven physicians, including neurologists, orthopedists, physiatrist, and internists. *See* Pet. Ex. 3 at 18, 21, 45; Pet. Ex. 7 at 19; Pet. Ex. 9 at 5; Pet. Ex. 10 at 3-4. Additionally, multiple tests, including MRIs, EMGs, and lumbar punctures, did not indicate a diagnosis of TM. *See* Pet. Ex. 3 at 30-31, 127-28; Pet. Ex. 3 at 85, 91-99; Pet. Ex. 5 at 2; Pet. Ex. 6 at 53; Pet. Ex. 6 at 58-59, 94-96; Pet. Ex. 8 at 434; Pet. Ex. 13 at 12, 131.

Petitioner was ordered to file an expert report by March 3, 2014. Non-PDF Scheduling Order, issued Jan. 13, 2014. Petitioner requested and was granted five extensions of time. Motions for Extension of Time, ECF Nos. 18-22. The billing records indicate that during this time period, petitioner's counsel of record at the time, Mark Krueger, contacted both Dr. Lawrence Steinman and Dr. Eric Gershwin to provide expert reports in this matter. Motion for Fees, Tab 1, at 6-7, ECF No. 75. Neither issued opinions in this matter. *Id*. Petitioner filed an expert report from Dr. Yehuda Shoenfeld, an immunologist, on November 10, 2014, offering ASIA as the mechanism connecting the vaccinations and petitioner's alleged injury. Pet. Ex. 20, ECF No. 24.

During a status conference held on December 18, 2014, the special master noted that it was unclear from the records whether petitioner's shin pain pre-dated her receipt of the allegedly causal vaccinations. Scheduling Order, ECF No. 28. The special master further noted that there was "some ambiguity in Dr. Shoenfeld's expert report with respect to whether transverse myelitis is the correct diagnosis." *Id*. Petitioner was ordered to file medical records and insurance records from the five years preceding her first round of vaccinations by January 30, 2015. *Id*. The special master ordered the parties to file a joint status report proposing next steps, and stating whether petitioner intended to file a supplemental expert report from a neurologist. *Id*.

Petitioner filed additional medical records as well as records of her insurance claims on January 29, 2015 and April 16, 2015. Pet. Ex. 105-106, ECF No. 29; Pet. Ex. 108-112, ECF No. 35. Petitioner filed a supplemental expert report from Dr. Shoenfeld as well as an expert report from Dr. Dimitrios Karussis, a neurologist, on August 5, 2015. Pet. Ex. 115, ECF No. 39; Pet. Ex. 128, ECF No. 55. Dr. Shoenfeld's report again discussed ASIA as the mechanism connecting the vaccinations and petitioner's alleged TM. Pet. Ex. 115 at 7-8. Dr. Karussis provided a summary of petitioner's medical records as well as an explanation of TM as a disorder; however, he did not discuss a plausible scientific theory which would explain how a vaccination could cause a person to develop TM. Pet. Ex. 128

During a status conference held on September 2, 2015, the special master noted that petitioner's expert reports did not fully address the issues raised by respondent's Rule 4(c) report. Petitioner was ordered to file an expert report in which her experts explained why they do not believe that petitioner had a pre-existing condition, and why they believe that transverse myelitis is an appropriate diagnosis. Scheduling Order, ECF No. 41. Petitioner was also instructed to file outstanding medical records. The special master noted that petitioner was to file her expert reports after all outstanding medical records had been submitted. *Id.*

Petitioner filed outstanding medical records and a status report on October 7, 2015, which advised that respondent had requested all of petitioner's MRI films. The status report futher advised that petitioner was in the process of obtaining the MRIs. Pet. Ex. 116-117, ECF No. 43; ECF Nos. 44, 45. Petitioner was ordered to supply the MRI films to respondent and file a status report by November 23, 2015. Scheduling Order, ECF No. 46.

This case was reassigned to me on October 22, 2015. ECF No. 48. Petitioner filed a supplemental expert report from Dr. Karussis on February 4, 2016. Pet. Ex. 128, ECF No. 55. This report addressed first, whether there was evidence that petitioner had previously existing neurological syndrome, and second, whether the diagnosis of TM had been established. Pet. Ex. 128 at 7. Dr. Karussis stated that the diagnosis of TM "was also confirmed by additional neurologists who examined the petitioner." *Id.* at 8. Dr. Karussis did not address any of petitioner's preexisting complaints of leg pain, but rather stated that "…the absence of typical findings in the initial normal neurological examination, (sic) strongly exclude the possibility of a pre-existing myelopathy or other pathological involvement of the CNS." *Id.* at 9. Dr. Karussis did not include a plausible scientific theory causally connecting the vaccinations to petitioner's alleged TM in this report. *See generally* Pet. Ex. 128.

Respondent filed expert reports from Dr. Wu and Dr. Winell on September 15, 2016. Resp. Ex. A-B, ECF No. 62.

On January 30, 2017, petitioner filed a Motion to Amend/Correct Case Caption, noting that petitioner had recently gotten married and changed her last name. ECF No. 67. This motion was granted, and the case caption was changed from "Katelin B Arnold" to "Katelin B Krause." ECF No. 68.

Petitioner filed updated medical records on February 8, 2017, and a supplemental expert report from Dr. Karussis on February 15, 2017. Pet. Ex. 130-133, 143; ECF Nos. 69, 72.

3

A status conference was held on April 20, 2017; the undersigned noted that petitioner's recently filed medical records reflected that she had a baby in March of 2016, and that her OB/GYN records did not indicate any health problems during pregnancy or delivery. Scheduling Order, ECF No. 73. Petitioner was ordered to file a status report advising the Court of petitioner's current state of health, as well as any updated medical records. *Id.* During the conference, respondent noted that there were certain concerns with petitioner's expert reports that respondent would like to have addressed. *Id.* Respondent was instructed to file a status report with a list of issues and concerns for petitioner's experts to address. *Id.*

On June 8, 2017, petitioner filed a motion to substitute Andrew Krueger as counsel of record, advising that previous counsel of record Mark Krueger had passed away. ECF No. 74. This motion was granted.

On June 28, 2017, petitioner filed a status report indicating that she did not have any updated medical records to file. Pet. S.R., ECF No. 76. Additionally, petitioner stated that she is not currently being treated for her alleged TM, but "she does have occasional muscle spasms which cause her difficulties with day-to-day activities." *Id*. at 1. Petitioner stated that her doctor has indicated that no further treatment is necessary unless her condition worsens. *Id.*

On July 19, 2017, respondent filed a status report stating that he had notified petitioner's counsel of the concerns that respondent would like petitioner's experts to address. ECF No. 80. Petitioner was ordered to file a status report clarifying the status of the record and proposing a due date for responsive expert reports by September 18, 2017. Non-PDF Order, issued Jul. 19, 2017.

Petitioner filed a motion for interim attorneys' fees and costs on June 26, 2017. Motion for Fees, ECF No. 75. Respondent filed a response on July 12, 2017. ECF No. 78. Petitioner filed a reply on July 13, 2017. ECF No. 79.

This matter is now ripe for decision.

## II. Applicable Legal Standards

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fees" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and

reputation." *Id*. at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). That product is then adjusted upward or downward based on other specific findings. *Id*.

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### III. Discussion

Interim fees may be paid at the discretion of the special master. *See Avera v. Sec'y of HHS*, 515 F.3d 1343, 1352 (Fed. Cir. 2008) ("Interim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained.") Additionally, "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d, 1372, 1375 (Fed. Cir. 2010).

This matter has been pending for four years. During this time, the parties have been unable to reach a mutual resolution, and may require an entitlement hearing. Due to the special master's full hearing schedule, the earliest available date for a hearing would be in 2019. Therefore, an award of interim fees and costs is appropriate so that counsel is not unduly financially burdened during protracted litigation.

**A.    Reasonable Hourly Rate**

In general, the hourly rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health and Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id*. This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides a framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has issued a fee schedule that updates the *McCulloch* rates to account for inflation in subsequent years.[4]

---

[4] This fee schedule is posted on the court's website. *See Office of Special Masters: Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*,

Petitioner has requested $47,506.30 in attorneys' fees and $21,441.70 in costs, for a total of $68,948.00. Motion for Fees at 5. Respondent filed a response to petitioner's motion for fees on July 12, 2017. Respondent stated that, while he "defers to the Special Master to determine whether or not petitioner has met the legal standard for a second (sic)[5] interim fees and costs award," he was otherwise satisfied that the requirements for an award of fees and costs were met, and recommended that "the special master exercise her discretion and determine a reasonable award for interim attorneys' fees and costs." Response at 2-3, ECF No. 78.

The requested hourly forum rates are consistent with the rates previously found to be reasonable in cases involving Mr. Mark Krueger, Mr. Andrew Krueger, and Ms. Renee Nehring. *See Herrera v. Sec'y of Health & Human Servs.,* No. 15-651V, 2017 WL 1459002 (Fed. Cl. Spec. Mstr. Mar. 29, 2017). Therefore, the undersigned finds the requested rates to be reasonable.

**B.     Hours Reasonably Expended**

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" include "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). Ultimately, it is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

The overall fee request appears reasonable and therefore a line-by-line analysis was deemed unnecessary. *See generally* Motion for Fees, Tab 1. However, counsel is advised to be

---

http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.

[5] Respondent's response stated that this was petitioner's second Motion for Interim Attorneys' Fees and Costs. The docket does not reflect a previous application for interim fees and costs, nor a previous decision on interim fees and costs. The instant application appears to be petitioner's first request for interim fees.

prudent in his billing practices, particularly with regard to the amount of time spent summarizing medical records and preparing fee petitions.

**C.    Reasonable Costs**

Petitioner has requested $21,441.70 in costs, including $12,000 in expert fees for Dr. Yehuda Shoenfeld, $6,000 in expert fees for Dr. Dimitrios Karussis, and $2,052.28 in costs associated with obtaining medical records. *See generally* Motion for Fees, Tab 2. These costs appear to be reasonable and appropriate in light of the facts of this case; therefore, I see no need to reduce them.

## IV. Total Award Summary

I find that petitioner's counsel's request is reasonable and she is entitled to the requested fees and costs pursuant to § 15(e)(1).  For the reasons contained herein, **a check in the amount of $68,948.00 made payable jointly to petitioner, Katelin Krause, and petitioner's counsel of record, Andrew Krueger, for petitioner's attorneys' fees and costs shall be issued.**

The clerk of the court shall enter judgment in accordance herewith.[6]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[6] Entry of judgment can be expedited by each party's filing or a joint filing of a notice renouncing the right to seek review. *See* Vaccine Rule 11(a).